UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RICHARD JANSSEN GmbH, a German limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO PACKING, INC., a California corporation<br><br>Defendant. | No. 2:19-cv-01636<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Richard Janssen GmbH ("Janssen") brings this action against Defendant Sacramento Packing, Inc., ("SacPac") alleging that defendant failed to deliver thirty-five containers of walnuts in breach of three separate contracts. Plaintiff also alleges that defendant fraudulently induced plaintiff into the contracts because defendant never intended to perform. Before the court is defendant's Motion to Dismiss and Request for Judicial Notice (Docket No. 7.)

1

## I. Factual Background

Janssen is a German company and worldwide marketer of dried fruit, nuts, and fruits and vegetables. (Compl. at 1, ¶ 1.) SacPac is a California corporation that, among other things, processes, packages, and distributes agricultural commodities, including walnuts. (Compl. at 1-2, ¶ 2.)

Janssen sought to purchase walnuts from SacPac to fulfill orders Janssen had procured from Lidl, a large German supermarket chain. (Compl. at 2, ¶ 7.) Prior to agreeing to any sale, the parties allegedly discussed the walnut specifications Lidl sought, "as well as the materiality of Lidl's specifications to any transaction." (Compl. at 2-3, ¶ 7.) Plaintiff allegedly informed defendant that "if the walnuts did not meet Lidl's specifications, Lidl would reject the deliveries." (Id.)

The parties thereafter allegedly entered into three separate purchase contracts for the purchase of walnuts. (Compl. at 3, ¶ 8). Under the first purchase order ("First Contract"), identified as RJ-2018-14, defendant was to ship ten container loads of light, 40% pieces and halves, light color Chandler U.S. No 1. (Compl. at 3, ¶ 8(a).) Under the second purchase order ("Second Contract"), identified as RJ-2018-22, defendant was to ship fifteen containers of the same product after completion of the first shipment. (Compl. at 3, ¶ 8(b).) Under the third purchase order, identified as RJ-2018-24, defendant was to ship ten containers of the same product after completion of the second shipment. (Compl. at 3, ¶ 8(c).)

Each of the purchase order agreements was subject to

the following "Terms & Conditions":

> Quality of the goods must be in accordance with USDA/DFA terms and the product specifications attached. If Lidl's test results are out of spec., seller will have 3rd party analyze 2 more library samples. If analysis is still out of spec., seller has to pay EUR 0,30/kg for pasteurization.
> Seller must provide all analyses prior to shipment.
> BL's must be issued to Lidl Stiftung & Co.
> Requirements outlined in appendices must be fulfilled.

(Compl. Exs. A ("First Contract"), B ("Second Contract"), C ("Third Contract").) The specifications list attached included, among other things, limits on the concentration of shell pieces, as well as color and appearance parameters. (Id.)

Plaintiff alleges that defendant shipped to plaintiff ten containers of walnuts. (Compl. at 4, ¶ 10.) Janssen then delivered the containers to Lidl. (Compl. at 4, ¶ 11.) Lidl proceeded to reject the containers for failing to conform to the specifications in the purchase agreement. (Compl. at 4, ¶ 12.) According to plaintiff, the walnuts had an excess of shell fragments, and did not meet the color and appearance requirements listed under the specifications. (Compl. Ex. D at 4 (Docket No. 1-4).) After plaintiff notified defendant of the rejection, plaintiff allegedly conducted an inspection of the containers and concluded that the walnuts indeed were nonconforming. (Compl. at 4-5, ¶ 13.) Defendant allegedly has not delivered any more walnuts to Janssen. (Compl. at 5, ¶ 14.)

Plaintiff alleges that it had to pay a third party to clean, repackage, and re-deliver six of the ten containers it received from SacPac to get Lidl to accept the containers. (Compl. at 5, ¶ 15-16.) Plaintiff also alleges that it sold the other four containers delivered under the First Contract on the

secondary market. (Compl. at 5, ¶ 15(b).)

Because Janssen has shipped only nine of the thirty-five containers it expected to ship under the three purchase orders, Lidl has allegedly covered for seventeen of the missing containers. (Compl. at 6, ¶¶ 23, 24.) Lidl has allegedly informed Janssen that it intends to backcharge Janssen for the difference in cost acquisition. (Compl. at 6-7, ¶ 24.)

Janssen's damage allegations under the First Contract include the cost to store, clean, re-pack, and redeliver six containers, the Lidl backcharges for the four container Lidl covered, and lost profits on those four containers. (Compl. at 8, ¶ 34.) Under the Second and Third Contracts, Janssen alleges damages equal to the Lidl backcharges for containers covered by Lidl and lost profits on those containers. (Compl. at 9, ¶ 40; 10, ¶ 47.)

Janssen alleges that defendant behaved fraudulently because defendant represented that it "would provide walnuts which met the agreed upon specifications," but "never intended" to do so. (Compl. at 11, ¶¶ 50-51.) According to plaintiff, the false representations were made knowingly or "recklessly and without regard for its truth," and defendant "intended that Janssen would rely on the representations." (Compl. at 11, ¶ 52-53.)

Janssen alleges four causes of action: three for breach of contract, and one for promissory fraud.

II. Defendant's Motion to Dismiss

A. Legal Standard

To decide a motion to dismiss under Rule 12(b)(6), a

4

court ordinarily "looks only to the face of the complaint." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). "A copy of a written instrument that is an exhibit to a pleading" however, is also "a part of the pleading for all purposes." Fed. R. Civ. P. Rule 10(c).

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court, however, is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The court should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rabang v. INS, 35 F.3d 1449, 1451 (9th Cir. 1994) (citing Buckey v. County of Los Angeles, 968 F.2d 791, 793-94 (9th Cir. 1992)).

B. Breach of Contract Claims

Plaintiffs allege three distinct causes of action for breach of contract. In California, to allege a cause of action for breach of contract, plaintiff must plead "(1) the existence

5

of a contract, (2) defendant's breach, (3) plaintiff's performance or excuse for nonperformance, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Defendants do not contest that plaintiff has successfully pleaded the existence of the three contracts, that plaintiff performed, or that plaintiff pleaded damages. Defendants dispute only whether the pleadings allege a breach by the defendant.

### 1. Breach of the First Contract

The first purchase agreement required defendant to sell to Janssen ten containers of light, 40 percent pieces and halves, light-color Chandler U.S. No. 1 grade walnuts from SacPac's 2018 crop. (See Compl. First Contract; Compl. at 3, ¶ 8(a).)

Plaintiff sufficiently pleads defendant's breach of this contract. The product specifications in the First Contract limited the concentration of walnut shells and had certain appearance requirements. (Compl. First Contract at 2.) According to plaintiff, the walnuts that SacPac delivered had an excess of shell fragments, and did not meet the light-color and appearance requirements listed under the specifications. (Id. Ex. D at 4 (Docket No. 1-4).) Plaintiff alleges that it warned SacPac that, "if the walnuts did not meet Lidl's specifications, Lidl would reject the deliveries." (Id. at 2-3, ¶ 7.) Lidl subsequently rejected the ten containers that SacPac sent pursuant to this contract "as nonconforming to its required specifications." (Id. at 4, ¶ 12.) Plaintiff further alleges that, after Lidl rejected the delivery, plaintiff inspected the

6

containers and "confirmed that none of the walnut containers" conformed to Lidl's specifications. (Id. at 4-5, ¶ 13.) Plaintiff's allegation that the walnuts did not conform to the shell fragment, color, and appearance specifications in the contract, combined with plaintiff's warning to defendant, Lidl's rejection of the walnuts, and plaintiff's ensuing inspection of the walnuts, if taken as true, suffice to allege that the walnuts were nonconforming and defendant breached the contract.

### a. DFA Inspection

Defendant argues that, based on the language in the contract, the walnuts did conform to the specifications. Defendant's argument relies on the court finding that "the plain language in the contract clearly set up DFA as a third party arbiter of the size and quality of the walnuts." (Def.'s Resp. to Mot. to Dismiss at 4 (Docket No. 7-1).) The plain language of the contract says no such thing.

Defendant insists that the contract provided for DFA , are the same thing. DFA "to be the entity that made the determination of whether the nuts met" the "product specifications." Id. If true, defendants argue, because the product shipped, the court could infer that the DFA concluded that the walnuts did conform to Lidl's specifications. Id. No such inference is justified.

First, the contract does not establish any kind of relationship between the parties and DFA. The only reference to DFA in the contract merely establishes that the products must conform to "USDA/DFA terms." Notably, defendant does not quote any part of the contract for its proposition that the "plain

7

language" suffices to find a relationship with DFA. Defendant's position that the contract established that DFA would evaluate the product under Lidl's specifications is just false.

Second, from a reading of the contract it is at least plausible, if not more likely, that the "USDA/DFA terms" and the "product specifications" are two different standards and the contract therefore required compliance with both such that the walnuts could satisfy the DFA's terms but not Lidl's. The text of the purchase agreement requires defendant's walnuts to conform "with USDA/DFA terms <u>and</u> the product specifications attached," which suggests that the attachment requirements are separate from the DFA terms. (Compl. Ex. A (emphasis added).) The text also mentions once again that the "[r]equirements outlined in appendices must be fulfilled." (<u>Id.</u>) The appendices are titled "Requirements Lidl USA" and "180918_Specification Californian Walnuts 40% LHP Lidl," and neither references DFA. <u>Id.</u> It is clear from the contract what Lidl's specifications are. On the other hand, the contract gives the reader no clue as to what the "DFA terms" are or what "DFA" even stands for.[1]

Third, for the court to make assumptions about the parties' relationship with DFA would be inappropriate at this stage. The court is confined to the allegations in the Complaint. The Complaint alleges sufficient facts for the court to conclude that the color and appearance of the walnuts

---

[1] At oral argument, the parties were in agreement that "DFA" as it appears in the contract stands for "DFA of California." Even assuming that the contract makes that clear, which it does not, the contract provides no basis for the court to find that DFA evaluated the shipment at issue subject to Lidl's specifications.

8

plausibly did not conform to the specifications that clear language in the contract lays out.

         b. Third-Party Inspection

    Defendant also argues that it did not breach the contract because the contract required a third party to analyze the shipment following a shipment rejection and plaintiff did not "avail[] itself of the specified procedure." (Def.'s Resp. to Mot. to Dismiss at 5.) This argument does not prevent the court from inferring a breach. The contract declares that, "[i]f Lidl's test results are out of spec., seller will have 3rd party analyze 2 more library samples." (Compl. First Contract at 1.) According to plaintiff, plaintiff "notif[ied] [defendant] that Lidl had rejected the walnut containers." (Compl. at 4-5, ¶ 13.) Assuming plaintiff's allegation to be true, and reading the text of the contract in the light most favorable to the plaintiff, plaintiff was not required to avail itself of any procedure. Instead, defendant -- not plaintiff -- was obligated to have a third party inspect the shipment. That the contract had additional inspection requirements for defendant does not prevent the court from finding that plaintiff sufficiently alleges a breach.

       2. Breach of the Second and Third Contracts

    According to the allegations, defendant did not ship the containers it had agreed to ship under the Second and Third Contracts. (Compl. at 9, ¶ 38, 10, ¶ 44.) These allegations, if true, suffice for the court to find that defendant plausibly

breached the contracts.[2]

## B. Promissory Fraud Claim

The elements of a promissory fraud claim are "1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promisee." Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1453 (2011); see also Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013) (citing Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 974 (1997)).

Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Id. Plaintiffs must plead "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). "The time, place and content of an alleged misrepresentation" alone do not satisfy the

---

[2] Defendant's arguments that DFA sanctioned the shipment under Lidl's specifications and that a third party was to inspect the shipment after Lidl's rejection are inapposite here because defendant allegedly never shipped the containers. Defendant makes no other argument to dismiss these two causes of action.

10

pleading standard. <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F. 3d 1541, 1547-48 (9th Cir. 1994). Instead, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity," <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993), including "an explanation as to why the statement or omission complained of was false or misleading." <u>In re GlenFeld</u>, 42 F. 3d at 1547-48.

Plaintiff alleges that SacPac principal Jaswant Bains "at the time of execution of each of the three Purchase Contracts, represented that Sacramento Packing would provide walnuts which met the agreed upon and required product specifications contained within each of the Purchase Contracts." (Compl. at 11, ¶ 50.) According to plaintiff, SacPac "never intended to provide walnuts" that met the specifications. (Compl. at 11, ¶ 51.)

Plaintiffs' allegations do not satisfy the Rule 9(b) heightened pleading standard for fraud. At the very minimum, plaintiff's allegations do not identify the specific promises made or the "times, dates, [and] places" of the alleged fraudulent promises. See <u>Neubronner</u>, 6 F.3d at 672. Further, plaintiff alleges no explanation as to why plaintiff believes defendant did not intend to perform. These allegations do not give defendant adequate notice of the particular misconduct at issue. See <u>Semegen</u>, 780 F.2d at 731 (9th Cir. 1985). Plaintiff's allegations are not sufficiently specific under Rule 9(b), so the court must dismiss this claim.

III. <u>Request for Judicial Notice</u>

Defendant asks the court to judicially notice the

following facts:

    1.   The DFA of California is a third-party inspector that routinely provides inspection services at the point of product packing to ensure the quality of the goods meets the specifications provided.

    2.   The reference in the contract to the requirement that the "Seller must provide copies of all analyses prior to shipment" refers to the DFA grade sheets upon such inspection at the plant of shipper/Seller California Packing, Inc.

(Req. for Judicial Notice (Docket No. 7-2).)

    Under Federal Rule of Evidence 201, at a party's request, the court must judicially notice a fact not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Defendants ask the court to judicially notice the facts above under the rule's second option and offer the website of the DFA of California as the source of information.[3]

    The matters of which defendant asks to take judicial notice are classic examples of what a court should <u>not</u> judicially notice. First, it is preposterous to suggest that it is generally known in the community what DFA is or what it does. Only a very small number of people in the agricultural growing business would even know what the initials stand for. Second, the accuracy of the website of DFA of California can certainly be

---

[3] DFA of California's website is www.dfaofcalifornia.com.

12

questioned.  It is not obvious who prepared, owns, or controls this website.  "Anyone may purchase an internet address." Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007). Further, "[c]orporate websites, in particular, are often marketing tools that contain more 'puffery' than fact."  United States v. Kane, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) (quoting id.).  For these reasons, "[p]rintouts from a web site" must be authenticated with "some statement or affidavit," In re Homestore.com, Inc. Sec. Litig., 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004), not blindly accepted as truth.  This court cannot reasonably conclude that this website's information is accurate and must therefore deny defendant's request for judicial notice.

     IT IS THEREFORE ORDERED that Sacramento Packing's Motion to Dismiss (Docket No. 7) be, and the same hereby is, GRANTED with respect to plaintiff's claim for promissory fraud.

     IT IS FURTHER ORDERED that Sacramento Packing's Motion to Dismiss be, and the same hereby is, DENIED with respect to plaintiff's three claims for breach of contract.

     IT IS ALSO ORDERED that Sacramento Packing's Request for Judicial Notice be, and the same hereby is, DENIED.

     Janssen has twenty days from the date this order is signed to file a First Amended Complaint, if it can do so consistent with this Order.

Dated: November 6, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14